UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BOBBY MURRAY and LORETTA MURRAY, )
    Plaintiffs, )
)
v. ) No. 3:07-CV-482
) (Phillips)
HARRIMAN CITY, JACK STOCKTON, )
KENNETH MYNATT, JOHN MAYES, )
JARRED WHITSON, KEITH STOUT, and )
DR. THOMAS BODUCH, )
    Defendants. )

## MEMORANDUM AND ORDER

Plaintiffs, acting *pro se,* have brought this action pursuant to 42 U.S.C. § 1983 claiming that the defendants violated their civil rights, conspired against them, and harassed them during a January 18, 2007 traffic stop that led to plaintiff Bobby Murray's arrest. Defendants Kenneth Mynatt, Jack Stockton, Jarred Whitson, John Mayes and the City of Harriman[1] have filed motions for summary judgment on the grounds that there are no genuine issues of material fact and the defendants are entitled to judgment as a matter of law. For the reasons which follow, the defendants' motions for summary judgment will be granted and this action dismissed.

---

[1] By order entered April 30, 2009, Dr. Thomas Boduch was dismissed as a defendant in this action [Doc. 65]. By memorandum and order entered November 12, 2008, Keith Stout was dismissed as a defendant in this action [Doc. 44].

1

## I. Factual Background

Plaintiffs were traveling through the City of Harriman on January 18, 2007 in a vehicle driven by Bobby Murray. They were stopped by Harriman City Police Officer John Mayes, after Officer Mayes observed that Bobby Murray failed to signal when changing lanes and failed to dim his headlights to oncoming traffic. In support of their motions for summary judgment, defendants have submitted the in-car video of Jarred Whitson, which begins at the time plaintiffs were stopped. After stopping the vehicle, Officer Mayes approached and asked Bobby Murray for his license and registration. Murray refused to produce identification. Plaintiffs claim that Officer Mayes did not need to see Bobby Murray's identification because he knew who he was. However, Officer Whitson can be heard over and over again asking to see Bobby Murray's identification. After Murray failed to show his driver's license to the officers and refused to provide any information, he was cited under Tenn. Code Ann. § 55-50-651, for failure to produce identification. After writing up the citation for failure to produce identification, the officers asked Murray to sign the citation. Murray refused. Murray was then placed under arrest and handcuffed by Officer Whitson. Officer Whitson placed Murray in the back of his police cruiser.

The video next records the officers efforts to provide transportation assistance to Loretta Murray. First, in their efforts to both help Mrs. Murray get home and avoid the expense of towing the vehicle, the officers tell her that she can drive the vehicle home if she will show them her driver's license. When Mrs. Murray refuses to show her license, Officer Whitson tells her, "I can't let you drive here in this vehicle unless I make sure you have a valid license." When Mrs. Murray refuses again, Officer Whitson explains that all Mrs.

2

Murray has to do is show them her license, "then you can drive away in the vehicle and go wherever you need to go . . . ." After it becomes clear that Mrs. Murray is not going to show the officers her license, Officer Whitson offers to call someone to come and pick Mrs. Murray up. He says, "if you want us to call someone to come and get you . . . ." Again, Mrs. Murray did not respond. Officer Whitson once again tells her, "this is really not necessary. if you'll just let me verify that your license is good, you can take the vehicle and go to the jail, or wherever it is you need to go." After he receives no response, Officer Whitson asks her again, "is there someone you would like me to call to come pick you up?" Eventually, Officer Whitson asks her, "you want to walk?" Officer Whitson then asks Mrs. Murray if she has a preference for a towing company. The officers obliged when Mrs. Murray requested Freddy Collins Towing.

Plaintiffs allege that when Officer Mayes took Bobby Murray's billfold out of the glove compartment while searching the car, he removed a $100 bill out of the billfold. Plaintiffs further allege that they never received the $100 bill back, and that the officers pocketed the money. The video, however, shows Officer Mayes locating the billfold in the Murray vehicle, removing it, and placing it on the hood of Officer Whitson's police cruiser in plain view of the camera, the officers, and the plaintiffs. The billfold remains on the hood of the police cruiser while the parties wait for the tow truck. After the tow truck arrives and loads the Murray vehicle for transport, the video records Officer Whitson asking Bobby Murray if he wants to keep the billfold with him. Bobby Murray tells Officer Whitson to "put it back where you got it." Officer Whitson can be heard saying "I'm going to give her [Loretta Murray] this wallet." Officer Whitson then walks up to the tow truck and gives the

3

billfold to Loretta Murray. After the Murray vehicle was towed, Officer Whitson drove Bobby Murray to the Roane County Jail.

Officer Whitson delivered Bobby Murray to the Roane County Jail. The next morning, Bobby Murray saw the jail physician Dr. Boduch. Dr. Boduch asked Bobby Murray if he wanted his medications delivered to the jail so they could be provided to him and if he wanted a copy of his medical records delivered to the jail for their consideration. Bobby Murray rejected these offers because he stated that he "wasn't going to be in jail that long." Bobby Murray was released from the Roane County Jail at about 4:35 p.m. on January 19th, having spent approximately 19.5 hours in custody. Dr. Boduch testified that Bobby Murray was not exhibiting any acute or serious medical needs, and that Bobby Murray did not ask him for any medical assistance.

## II. Summary Judgment Standard

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Once the moving party presents evidence

4

sufficient to support a motion under Rule 56, Federal Rules of Civil Procedure, the non-moving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question; but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994). As noted by the Supreme Court:

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable

> jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Claims under 42 U.S.C. § 1983

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In order to prevail on such a claim, a § 1983 plaintiff must establish (1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law. *Whittstock v. Mark A. Van Sile, Inc.,* 330 F.3d 899, 902 (6th Cir. 2003). Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred. *Gardenshire v. Schubert,* 205 F.3d 303, 310 (6th Cir. 2000). It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings. *Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir. 1986).

<u>Traffic Stop</u>

The Sixth Circuit has held that "a traffic stop is reasonable and does not violate the Fourth Amendment so long as the police officer making the stop has probable cause to believe that a traffic violation has occurred or was occurring." *United States v.*

6

*Ferguson*, 8 F.3d 385, 392 (6th Cri. 1993). Whether a traffic stop is an unreasonable seizure in violation of the Fourth Amendment is assessed by objectively evaluating the officer's conduct in light of the surrounding circumstances known to the officer. *Id.* at 388. Probable cause is "reasonable grounds for belief supported by less than *prima facie* proof but more than mere suspicion." *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir. 1990). Here, Officer Mayes observed Bobby Murray failing to signal when changing lanes and failing to dim his headlights to oncoming traffic. Accordingly, Officer Mayes had probable cause to believe that a traffic violation was occurring and could properly stop Murray and detain him while issuing the traffic citation. *See United States v. Blair*, 524 F.3d 740, 752 (6th Cir. 2008) (holding that an officer may detain a vehicle and its occupants for the length of time necessary to complete the traffic stop).

Civil Conspiracy

Plaintiffs allege that "the officers conspired together on the spot to violate our civil rights." Plaintiffs' Complaint, pg 3. A § 1983 conspiracy requires (1) that the alleged conspirators form a plan to violate the plaintiffs' constitutional rights, (2) that the alleged conspirators share in the objectives of the plan, (3) that an overt act be committed in furtherance of the plan, and (4) that the act cause some injury to the plaintiffs. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003). Nothing in the in-car video supports plaintiffs' allegations that the officers involved in the traffic stop had any agreement to violate plaintiffs' civil rights. Accordingly, defendants are entitled to judgment as a matter of law on plaintiffs' claim for civil conspiracy.

7

Case 3:07-cv-00482   Document 73   Filed 02/10/10   Page 7 of 18   PageID #: 369

Bobby Murray's Arrest

Plaintiffs also claim that their Constitutional rights were violated when the officers arrested Bobby Murray. The in-car video of Officer Whitson speaks for itself. It shows that Bobby Murray refused to produce identification and refused to sign the citations. Refusal to sign a citation requires an officer to arrest the offender under Tenn. Code Ann. § 40-7-118(c)(6).

In *Russell v. Messina*, 1998 WL 96572 (6th Cir. 1998), the plaintiff brought a § 1983 action against arresting officers, claiming he was arrested without probable cause in violation of his Fourth Amendment right to be free from unreasonable search and seizure. The officer initially stopped Russell for committing a minor traffic violation, but Russell argued that this was either a pretextual stop or an unwarranted one, because Russell claimed he did not commit a traffic violation. Pertinent to the instant case, after being stopped, Russell, "not only refused to identify himself and present a driver's license and registration, but also refused to even talk to the officers. Given the refusal to cooperate, Russell was arrested." The Sixth Circuit noted that the initial traffic stop was not an arrest: "It was only after Russell stubbornly refused to identify himself or produce a license or registration that he was lawfully arrested." The Sixth Circuit ruled:

> [i]f every person stopped for a traffic violation had the right to "challenge" the validity of the stop in the manner that Russell did, needless police-citizen confrontations would result . . . . The proper forum for Russell to contest the validity of the citation he was given was the court not the street.

*Id.*

8

Tenn. Code Ann. § 40-7-118(b)(1) states that a peace officer who has arrested a person for the commission of a misdemeanor . . . shall issue a citation to the arrested person to appear in court in lieu of continued custody. Section 40-7-118(c)(6) states that "no citation shall be issued . . . if the person refuses to sign the citation." Here, the officers faced a similar situation to the officers in *Messina*. Bobby Murray had the option to produce identification and sign the citations, thus avoiding the "humiliation of going to jail" and tow truck expense. Bobby Murray also had the option to challenge the citations in traffic court. When the officers arrested Bobby Murray on January 18, 2007, pursuant to Tenn. Code Ann. § 40-7-118(c)(6), they did not violate his civil rights. In fact, the officers followed Tennessee law and appropriately arrested Bobby Murray after he refused to produce identification or sign the citations. Accordingly, defendants are entitled to judgment as a matter of law on plaintiffs' claim for unlawful arrest.

Harassment

Plaintiffs allege that the defendant officers harassed them by "stopping them without a reason and charging false claims after they did stop." As stated above, the record shows that the plaintiffs were validly stopped for a traffic violation. Accordingly, plaintiffs have failed to state a claim for harassment or conspiracy under § 1983, and defendants are entitled to judgment as a matter of law.

Qualified Immunity

The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not

9

violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts generally employ a three-step test in reviewing claims for qualified immunity:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Sample v. Bailey*, 409 F.3d 689, 695-96. Consequently, if the police officers acted in an objectively reasonable manner, as assessed in the light of clearly established law at the time of the conduct at issue, they will be insulated by qualified immunity. *Harlow*, 457 U.S. at 818. Thus, even if a police officer has deprived a plaintiff of a federal right, qualified immunity will apply if an objectively reasonable officer would not have understood, by referencing clearly established law, that his conduct was unlawful. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998); *Rich v. City of Mayfield Hts.,* 955 F.2d 1092, 1095 (6th Cir. 1992). Whether an asserted federal right was clearly established at a particular time presents an issue of law. *Elder v. Holloway*, 510 U.S. 510, 516 (1994). In inquiring whether a constitutional right is clearly established, a trial court must look first to decisions of the Supreme Court, and then to decisions of the Sixth Circuit and other courts within the circuit, and finally to decisions of other circuits. *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993).

The "ultimate burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity." *Rich,* 955 F.2d at 1095. Claims of qualified immunity are assessed on a fact-specific basis to ascertain whether the particular conduct of the defendant police officers infringed on the clearly established federal right of the plaintiffs, and whether an objective, reasonable officer would have believed that his conduct was lawful under extant federal law. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Officials are entitled to qualified immunity "when their decision was reasonable, even if mistaken." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995). Further, "if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.*

The threshold issue is whether plaintiffs have alleged a constitutional violation by the arresting officers. Viewing the actions of the officers from the perspective of a reasonable officer on the scene and without the benefit of 20/20 hindsight, the court finds that the officers acted in a reasonable manner. The initial decision to pull Bobby Murray over was justified by his improper use of headlights and failure to signal when changing lanes. As can be clearly seen on the video, he was only arrested after he failed to provide identification and failed to sign the citations. Under Tennessee law, the officers were required to arrest Bobby Murray after he failed to cooperate.

Moreover, it is certainly not clear that a reasonable officer would understand that stopping a vehicle after observing traffic violations and subsequently arresting the driver after he fails to produce identification and sign the citations would be a violation of

11

plaintiffs' Constitutional rights. As stated above, the actions of the officers were reasonable and necessary under the circumstances. As evidenced by the video of Bobby Murray's arrest, the officers tried to convince him to cooperate with their lawful requests; however, Bobby Murray refused and was arrested as a result. Accordingly, the arresting officers are entitled to qualified immunity.

Loretta Murray's Claims

First, the court finds that Loretta Murray cannot state a claim for loss of consortium under § 1983 as a matter of law. *See Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000). Second, a review of the in-car video of Officer Whitson shows that no constitutional violation occurred during the traffic stop. The officers involved in the stop were very polite and professional in their dealings with plaintiffs. The court observed no actions on the part of the officers which violated any constitutional rights of Loretta Murray. As shown in the video, Mrs. Murray was repeatedly told that she could drive the vehicle home if she showed proof of a valid license. Rather than accept this offer, Mrs. Murray refused to provide identification. She was not told to walk home, but she was given several options for transportation home, including calling someone to come and pick her up or calling someone else to drive the vehicle home provided they had a valid driver's license. Because the defendants' did not violate Loretta Murray's civil rights, and because there is no loss of consortium claim under § 1983, Mrs. Murray has not stated a claim for relief and defendants will be granted judgment as a matter of law on her claims.

Municipal Liability

Plaintiffs allege that the City of Harriman is liable for the Constitutional violations of its officers. However, plaintiffs cannot rely on *respondeat superior* liability to hold the City liable under § 1983. *See Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658 (1978). Rather, under *Monell* and its progeny, a city may be held liable only (1) "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," *Monell*, 436 U.S. at 694, and (2) when there is an "affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985); *see also Petty v. County of Franklin, Ohio,* 478 F.3d 341, 347 (6th Cir. 2007). Plaintiffs must establish that the City of Harriman's official policies or customs (or lack thereof) were a "moving force" behind the deprivation of their rights and arose as a result of "deliberate indifference" to their rights. *See Doe v. Claiborne County,* 103 F.3d 495, 508 (6th Cir. 1996).

As stated above, the court has found that the arresting officers did not violate the plaintiff's civil rights; therefore, plaintiffs have not stated a viable claim for a § 1983 violation against the City of Harriman. Assuming, arguendo, that plaintiffs could show a violation of their Constitutional rights, they have not identified any policy or custom that was the moving force behind any alleged Constitutional violation. The evidence presented shows that the officers involved acted reasonably at all times and did not violate any of the plaintiffs' Constitutional rights. The facts show no unconstitutional policy or custom of the

13

City of Harriman. Accordingly, the court finds that the City of Harriman is entitled to judgment as a matter of law on plaintiffs' § 1983 claims.

### IV. Claims against Jack Stockton and Kenneth Mynatt

<u>Jail Conditions</u>

Plaintiffs' claims against Jack Stockton[2] and Kenneth Mynatt[3] arise from Bobby Murray's complaints regarding jail conditions – overcrowding of his cell, no provision of food or medicine, and improper jail attire. However, Bobby Murray states in his complaint, that he was offered food and water while detained. Plaintiffs' Complaint, pgs 8-9. In addition, Loretta Murray was not arrested and was never jailed at the Roane County Jail, and her complaint is only for loss of consortium, which as stated above, is not actionable under § 1983.

The Fourteenth Amendment's due process clause protects pretrial detainees from cruel and unusual punishments, and the Eighth Amendment's cruel and unusual punishments clause protects those convicted of crimes from cruel and unusual punishment. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16 (1979). An act or practice that violates the Eighth Amendment also violates the due process rights of pretrial detainees. *Martin v. Tyson,* 845 F.2d 1451, 1457 (7th Cir. 1988). The Supreme Court has held that overcrowding in a prison setting is not itself a violation of the Constitution. *See Rhodes v. Chapman,* 452 U.S. 337,

---

[2] Jack Stockton is the Sheriff of Roane County, Tennessee.

[3] Kenneth Mynatt is a jailer at the Roane County Jail.

14

347-48 (1981); *Owens v. Campbell*, 198 F.3d 246 (6th Cir. 1999). While overcrowded conditions can be restrictive and even harsh, they do not violate the Eighth Amendment unless they deprive the inmate of the minimal civilized measure of life's necessities. *Rhodes* at 348; *Ivey v. Wilson,* 832 F.2d 950, 954 (6th Cir. 1987). To allege a constitutional violation, a plaintiff must allege and present evidence that he was denied basic human needs such as food, warmth, or sanitation, or was otherwise subjected to cruel and unusual punishment by virtue of the alleged overcrowded conditions to justify relief. *Wilson v. Seiter,* 501 U.S. 294, 298 (1991); *Rhodes* at 348. Moreover, "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment. *Ivey* at 954.

Bobby Murray alleges that he was placed in a overcrowded cell with inadequate restroom facilities for 19 hours, but, given the limited duration, the court cannot find that this situation rose to the level of a constitutional violation. *See Hutto v. Finney,* 437 U.S. 678, 686-87 (1978) (A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.); *Whitnack v. Douglas County,* 16 F.3d 954, 958 (8th Cir. 1994) (deplorably filthy and patently offensive cell with excrement and vomit not unconstitutional because conditions lasted only for 24 hours); *White v. Nix,* 7 F.3d 120, 121 (8th Cir. 1993) (eleven day stay in unsanitary cell not unconstitutional because of relative brevity of stay); *Harris v. Fleming,* 839 F.2d 1232, 1235-36 (7th Cir. 1988) (five day stay in "filthy, roach-infested cell" not unconstitutional); *Ogbolu v. McLemore,* 1997 WL 49449 at 2 (10th Cir. Feb. 7, 1997) (cold, wet, drafty and unsanitary solitary cell for two days does not violate Eighth Amendment). The conditions plaintiff complains about may have

15

been inconvenient, uncomfortable and unpleasant, but they did not place his welfare at serious risk or deny him the minimal civilized measures of life's necessities or violate his Constitutional rights.

Deliberate Indifference to Medical Needs

Additionally, plaintiffs claim that jail personnel were deliberately indifferent to Bobby Murray's serious medical needs. The Fourteenth Amendment's Due Process Clause affords pretrial detainees a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners. *Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir. 1985). The Supreme Court has held that deliberate indifference to serious medical needs of detainees constitutes the "unnecessary wanton infliction of pain" prohibited by the Eighth Amendment. *Furman v. Georgia,* 408 U.S. 238, 241 (1972). This is true whether the indifference is manifested by officers in their response to the detainees' needs or by officers in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a detainee's serious illness or injury states a cause of action under § 1983.

The Supreme Court has established a two-step test for determining deliberate indifference (1) whether the medical needs are sufficiently serious, and (2) whether the defendant has acted in a deliberately indifferent manner. *See Farmer v. Brennan*, 511 U.S. 825 (1994). The subjective component requires that the defendant be aware of the inmate's serious medical needs or a substantial risk to the health or safety of the inmate

16

and that the defendant consciously disregarded this need or risk in a manner which evidences wantonness.

As stated in the court's earlier memorandum and order granting summary judgment to Dr. Boduch [Doc. 45], Bobby Murray has failed to state a constitutional violation. He saw Dr. Boduch, who offered to provide his medication and medical records to jail personnel. Bobby Murray rejected Dr. Boduch's assistance. Also, Dr. Boduch stated he did not observe any acute or serious medical needs and that Bobby Murray did not seek any medical assistance from him. Bobby Murray has failed to establish that the conduct of personnel at the Roane County Jail rose to the level of deliberate indifference to his medical needs. Accordingly, the court finds that Jack Stockton and Kenneth Mynatt are entitled to judgment as a matter of law on plaintiffs' § 1983 claims**.**

Verbal Harassment

Last, plaintiffs allege that Bobby Murray was instructed to address Kenneth Mynatt as "Major Mynatt." Construing plaintiffs' allegations as a claim for verbal harassment, it is well settled that verbal harassment is not a constitutional claim. *Taylor v. City of Falmouth,* 187 Fed. Appx. 596 (6th Cir. 2006); *Ellis v. Ficano*, 73 F.3d 361 (6th Cir. 1995); *see also Emmons v. McLaughlin,* 874 F.2d 351 (isolated threats and verbal abuse are not violations of constitutional magnitude); *Macko v. Byron*, 760 F.2d 95, 97 (6th Cir. 1985) (fear from spoken words is not an infringement of a constitutional right). Accordingly, defendant Kenneth Mynatt is entitled to judgment as a matter of law on plaintiffs' claim for verbal harassment.

17

## V. Conclusion

For the reasons stated above, defendants' motions for summary judgment [Docs. 47, 54] are **GRANTED**; and Kenneth Mynatt, Jack Stockton, Jarred Whitson, John Mayes, and the City of Harriman are **DISMISSED** as defendants in this action. All defendants having been dismissed by the court, this action is hereby **DISMISSED** in its entirety.

All remaining motions are denied as moot.

**ENTER:**

                    s/ Thomas W. Phillips
                    United States District Judge